**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RYAN BURDETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-02119 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| JUSTIN LABRIOLA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ryan Burdett has sued Defendant Officer Justin Labriola based on Labriola's actions while interviewing Burdett about his sexual assault allegations against his father. Specifically, in his Third Amended Complaint ("TAC"), Burdett alleges that Officer Labriola unlawfully searched and seized him before falsely arresting him in violation of the Fourth Amendment. Burdett also asserts a state-law claim of intentional infliction of emotional distress ("IIED"). Now before the Court is Officer Labriola's motion to dismiss the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Dkt. No. 39.) For the reasons stated below, the motion is granted in part and denied in part.

**BACKGROUND**

For purposes of the motion to dismiss, the Court accepts the well-pleaded factual allegations in the TAC as true and draws all reasonable inferences from those facts in Burdett's favor as the non-moving party. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The TAC alleges as follows.

On or about March 16, 2019, Burdett entered the River Forest Police Department to report incidents of sexual assault committed against him by his father. (TAC ¶¶ 10, 17, Dkt. No. 34.)

Upon entering the police station, Burdett was placed in a back room with Officer Labriola and another officer, Officer Michael Fries. (*Id.* ¶ 17.) During the ensuing interview, Officer Labriola closed the door to the room. (*Id.* ¶ 18.) Burdett proceeded to detail the sexual assault he experienced at the hands of his father from 2005 to 2019, explaining that he was a minor during much of that period. (*Id.* ¶¶ 11–12, 18, 20.) Further, Burdett told the officers that he had two siblings who were in his father's custody and that they were minors. (*Id.* ¶¶ 13–14.) As a result of his experiences, Burdett expressed concern for the safety of his siblings. (*Id.* ¶ 13.)

According to Burdett, he did not feel that he could leave the interview room unless instructed by the officers. (*Id.* ¶ 19.) At some point during the interview, Officer Labriola requested that Burdett provide his phone to the officers for their investigation. (*Id.* ¶ 21.) Burdett responded that he was not comfortable doing so, in part because he had several nude and suggestive pictures of women on his phone. (*Id.* ¶¶ 22–23.) As a result, Officer Labriola "became agitated and coerced [Burdett] into giving his cellular phone." (*Id.* ¶ 24.) Ultimately, Burdett signed a consent waiver, though Officer Labriola did not allow him to review the waiver before "demanding" that he sign it. (*Id.* ¶¶ 25–26.) According to Burdett, he did not feel free to leave the interview room at that time, and Officers Labriola and Fries did not inform Burdett that he could leave the room of his own volition. (*Id.* ¶¶ 27, 30.) Similarly, Burdett claims that he did not believe that he could refuse Officer Labriola's orders, as Burdett feared that refusing to sign the consent form would result in Officer Labriola harming or retaliating against him. (*Id.* ¶¶ 27, 28.) The entire interview between Burdett and Officers Labriola and Fries lasted approximately three hours. (*Id.* ¶ 31.)

At a later interview between Officer Labriola and Burdett (the date of which is not disclosed in the TAC), Officer Labriola "threatened to formally arrest [Burdett] for allegedly

fabricating a rape claim" when Burdett could not immediately respond to Officer Labriola's questions or requests for medical records. (*Id.* ¶ 39.) Burdett further alleges that Officer Labriola spoke with and demanded records from his medical providers. (*Id.* ¶ 59.)

On March 23, 2020, Burdett filed his original complaint against Officer Labriola pursuant to 42 U.S.C. § 1983 *pro se*. (Dkt. No. 1.) After the Court recruited pro bono counsel for him, Burdett filed his TAC, naming as defendants Officer Labriola, Officer Fries, and the Village of River Forest. (TAC ¶¶ 5–7.) The Court subsequently granted Burdett's motion to voluntarily dismiss all claims against Officer Fries and the Village of River Forest. (Dkt. No. 61.) Accordingly, Officer Labriola is the only remaining defendant in this litigation. In the TAC, Burdett asserts the following claims against him: unlawful seizure and unlawful search in violation of the Fourth Amendment (Count I); false arrest in violation of the Fourth Amendment (Count II); and IIED (Count III).

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The purpose of a Rule 12(b)(6) motion is not to decide the merits of the case; instead, such a motion asks the Court to decide whether a complaint is sufficient to state a plausible legal claim. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

I.       **Counts I and II—Unlawful Seizure and False Arrest**

Counts I and II assert claims against Officer Labriola for unlawful search and seizure and false arrest, respectively, in violation of the Fourth Amendment. In sum, Burdett alleges that, by taking him to the back room of the River Forest Police Department and interviewing him for three hours, Officer Labriola unconstitutionally seized and arrested Burdett. Because an arrest is a type of seizure, *Molina v. Latronico*, 430 F. Supp. 3d 420, 434 (N.D. Ill. 2019), the Court analyzes these claims in tandem although Burdett pleads them separately.

"[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In this way, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 436 (1991). This inquiry requires analyzing the totality of the circumstances. *Hicks v. Cook Cnty. Sheriff's Off.*, No. 15 C 6852, 2020 WL 1322844, at *12 (N.D. Ill. Mar. 19, 2020). Circumstances that may indicate seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554.

Moreover, "an initially consensual encounter between a police officer and a citizen can be transformed into a seizure or detention within the meaning of the Fourth Amendment" when the circumstances become such that a reasonable person would not feel free to terminate the encounter and leave. *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (internal quotation marks omitted). Nevertheless, the Supreme Court has clarified that "[t]he Fourth Amendment proscribes

4

unreasonable searches and seizures; it does not proscribe voluntary cooperation." *Bostick*, 501 U.S. at 439. Courts have therefore found that "[t]here is no Fourth Amendment violation where a witness voluntarily consents to remain at the police station, even for long periods of time in locked interview rooms." *Ayala v. City of Chi.*, No. 05 C 1967, 2005 WL 8177391, at *6 (N.D. Ill. Nov. 14, 2005) (denying preliminary injunction to certified class alleging witnesses remained in windowless police station interview rooms for more than 24 hours).

Burdett alleges not just that he was unlawfully seized but also that he was falsely arrested. To state a claim for false arrest under § 1983, a plaintiff must allege that there was no probable cause for his arrest. *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 984 (N.D. Ill. 2009) (citing *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009)). An arrest is a type of seizure. *Montgomery v. Sheahan*, No. 96 C 230, 1997 WL 139470, at *2 (N.D. Ill. Mar. 21, 1997) ("An unlawful arrest constitutes 'seizure' for purposes of the Fourth Amendment." (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989))). Stated differently, "[a]n arrest is one flavor of seizure; a seizure ripens into 'an arrest when a reasonable person in the [individual's] position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Molina*, 430 F. Supp. 3d at 434 (quoting *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999)). An arrest "requires either physical force or, where that is absent, submission to the assertion of authority." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). At bottom, without a seizure, no arrest has taken place.

Even viewing the facts in the TAC in the light most favorable to him, the Court finds that Burdett has not stated a claim of unlawful seizure or false arrest in violation of the Fourth Amendment. As an initial matter, by his own account, Burdett entered the River Forest Police Department of his own volition. His choice to seek out and provide information to Officers

Labriola and Fries was likewise voluntary. While an individual's initially consensual encounter may become a seizure, *I.N.S.*, 466 U.S. at 215, the Court cannot reasonably infer from Burdett's allegations that this is what took place at the River Forest police station. Based on his allegations, the Court cannot plausibly infer that reasonable person would have believed that he was not free to leave. Significantly, Burdett's allegations do not include any of the key indices of a seizure. *See Mendenhall*, 446 U.S. at 554. For example, he does not allege that Officer Labriola displayed his weapon or that he physically touched Burdett. Nor does Burdett allege that he was handcuffed or that Officer Labriola locked the interview room door. There were only two officers in the room, and Burdett does not allege that Officer Labriola threatened him or used language or a tone of voice indicating that Burdett had to stay and comply with Officer Labriola's requests. Ultimately, without more, Burdett's claim that he was subject to an unlawful seizure does not meet the plausibility standard.

To be sure, Burdett alleges that he "did not believe he could leave the [interview] room." (TAC ¶ 19.) But "[t]he reasonable person-free to leave standard is an objective one, and both the officer's and the encountered individual's subjective beliefs during the encounter are not determinative as to whether a seizure occurred." *Carlson v. Bukovic*, 621 F.3d 610, 619 n.15 (7th Cir. 2010). Burdett also highlights that his interview lasted approximately three hours. But there is no Indication in the TAC that the length of the interview resulted from anything other than the officers' efforts to conduct a thorough investigation and to get all of Burdett's story. *See Ayala*, 2005 WL 8177391, at *6 ("There is no Fourth Amendment violation where a witness voluntarily consents to remain at the police station, even for long periods of time in locked interview rooms."). Lastly, Burdett does allege that Officer Labriola became "agitated" and "coerced" Burdett into giving him his cell phone when Burdett expressed hesitance. (TAC ¶ 24.) However,

even though Officer Labriola's demeanor may have made Burdett afraid, a reasonable person who was voluntarily present at a victim interview would have, nevertheless, felt free to leave.

Because Burdett does not sufficiently allege an unlawful seizure, he also has not stated a claim for false arrest. As previously stated, an arrest is a type of seizure. *Molina*, 430 F. Supp. 3d at 434. Therefore, without a seizure, an arrest has not occurred. Accordingly, the Court grants Officer Labriola's motion to dismiss the unlawful seizure claim in Count I and the false arrest claim in Count II.

**II.    Count I—Unlawful Search**

As part of Count I, Burdett also alleges that he was subject to an unlawful search in violation of the Fourth Amendment. In particular, Burdett claims that Officer Labriola forced him to sign a consent waiver that allowed the officers to search Burdett's cellular phone.

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Scott*, 731 F.3d 659, 663 (7th Cir. 2013) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). "[A] warrant is generally required" for searches of cell phones and data on cell phones. *Riley v. California*, 573 U.S. 373, 386, 388 (2014). However, an exception for warrantless searches exists where "an authorized individual voluntarily consents to the search." *United States v. Richards*, 741 F.3d 843, 847 (7th Cir. 2014). "[W]hether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Alexander v. Doe*, No. IP 01-1674-C-K/T, 2003 WL 22244782, at *8 (S.D. Ind. Aug. 20, 2003) (quoting *Schneckloth*, 412 U.S. at 227); *Lovi v. Vill. of Arlington Heights*, 62 F. Supp. 3d 756, 765 (N.D. Ill. 2014) (quoting *Schneckloth*, 412 U.S. at 227). The factors used to determine voluntariness of consent include the following:

> age, education, and intelligence of the individual providing consent; whether he was
> advised of his rights; how long he was detained prior to giving consent; whether he
> immediately consented, or whether the police officers made repeated requests for consent;
> the existence or absence of physical coercion; and whether the individual was in custody.

*Valance v. Wisel*, 110 F.3d 1269, 1278 (7th Cir. 1997).

Since Burdett admits that he signed a consent waiver for the officers to search his phone,

Burdett can only state a claim for an unlawful search if he also has alleged that his consent was

not voluntary. Based on allegations in the TAC, Burdett has sufficiently done so. For example,

Burdett alleges that he initially informed Officer Labriola that he was not comfortable providing

his consent to a search, in part because he had several nude or suggestive photos of women on his

phone. Burdett also alleges that Officer Labriola "did not allow [him] to review the waiver before

demanding that [he] sign it." (*Id.* ¶ 26.) If an individual "was not fairly apprised of his

constitutional rights, the consent may not be voluntary." *Schneckloth*, 412 U.S. at 228. Further,

Burdett alleges some level of intimidation by Officer Labriola, who became "agitated" when

Burdett initially hesitated to provide consent. (TAC ¶ 24.) From these allegations, the Court can

draw the plausible inference that Burdett's signature was not voluntary. Moreover, unlike in

*United States v. Roman*, Burdett has not alleged that he knew he could refuse consent to Officer

Labriola's search.[1] *See* 626 F. App'x 177, 181 (7th Cir. 2015). Nor did Burdett consent

immediately upon request, as in *United States v. Ruiz*, 785 F.3d 1134, 1146 (7th Cir. 2015). Given

the totality of the circumstances alleged—that Burdett was not made aware of his rights, that he

did not immediately consent, and that Officer Labriola expressed agitation—the Court finds that

Burdett has plausibly alleged that his consent was not voluntary.

---

[1] *Roman* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the order's reasoning is persuasive and provides a useful point of comparison here. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).

On final point warrants mention with respect to Burdett's claim of an unlawful search in violation of the Fourth Amendment: Officer Labriola's argument that he is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). The doctrine generally balances the interests of holding public officials accountable when necessary and shielding officials from harassment, distraction, and liability when they have acted reasonably. *Reed v. Palmer*, 906 F.3d 540 (7th Cir. 2018).

At this stage, it would be premature to rule on Officer Labriola's entitlement to qualified immunity. After all, qualified immunity closely depends "on the facts of the case" and a "complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). As the Seventh Circuit has explained, the motion to dismiss stage is not "always (if ever) the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim." *Hanson v. Levan*, 967 F.3d 584, 589 (7th Cir. 2020). The Court will allow the parties to raise the issue at summary judgment, but refrains from ruling upon qualified immunity under Federal Rule of Civil Procedure 12(b)(6).

The Court thus denies Officer Labriola's motion to dismiss the unlawful search claim in Count I.

### III.     Count III—Intentional Infliction of Emotional Distress

Finally, in Count III, Burdett asserts a state-law IIED claim against Officer Labriola. In Illinois, a plaintiff must allege each of the following elements to state a claim for IIED: (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress, and (3) the defendant's conduct did cause severe emotional distress. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). To qualify as extreme and outrageous, "conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). In determining whether conduct rises to that level, courts consider three factors: (1) "the more power or control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme;" (2) "whether the defendant reasonably believed its objective was legitimate;" and (3) "whether the defendant was aware the plaintiff was peculiarly susceptible to emotional distress, by reason of some physical or mental peculiarity.'" *Franciski v. Univ. of Chi. Hosp.*, 338 F.3d 765, 769 (7th Cir. 2003).

Officer Labriola argues that Burdett's IIED claim is barred by the statute of limitations. Dismissing claims "as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). "Further, these defenses typically turn on facts not before the court at that stage in the proceedings." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Thus, "[t]he mere presence of a potential affirmative defense does not render the claim for relief invalid." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). "As

long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial) . . . ." *Sidney Hillman Health Ctr.*, 782 F.3d at 928; *see also Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) ("[A] motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." (internal quotation marks omitted)); *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003) ("[A]t this stage, the question is only whether there is ***any*** set of facts that if proven would establish a defense to the statute of limitations[.]"). But dismissal based on untimeliness "is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found.*, 559 F.3d at 674–75.

Burdett's IIED claim against Officer Labriola is subject to a statute of limitations of one year. Specifically, as an alleged tort involving a local government official, the claim here is subject to the Illinois Local Governmental and Governmental Employees Tort Immunity Act, which states that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a) (2003). An IIED claim "accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89 (Ill. 2003).

The IIED claim first appears in the TAC, which was filed on February 26, 2021. Meanwhile, the events giving rise to the alleged IIED took place in 2019. Thus, the IIED claim would appear to be time-barred. But Burdett is correct that the relation-back doctrine applies here. Federal Rule of Civil Procedure 15 provides that an amendment to a pleading relates back to the

date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). In this case, Burdett's IIED claim arises out of the same conduct alleged in his initial complaint—that "Justin Labriola used a true threat to get [Burdett] to comply with his order during a childhood rape investigation." (Compl. at 4.) Because his IIED claim arises out of the same alleged conduct, the date Burdett filed his original complaint—March 23, 2020—is the appropriate date to consider for statute of limitations purposes.

Even using this earlier filing date, Officer Labriola maintains that the IIED claim is time-barred because the cause of action accrued at the March 16, 2019 interview. According to Officer Labriola, Burdett's claim accrued on March 16, 2019 and his initial complaint was filed on March 23, 2020, meaning that the IIED claim was filed seven days past the end of the one-year statute of limitations period. But viewed in the light most favorable to Burdett, it is plausible to infer from the allegations in the TAC that the alleged IIED took place *after* the initial interview. For example, after discussing the events that took place on March 16, 2019, Burdett alleges that, "[a]t a later interview, Defendant Labriola threatened to formally arrest [him] for allegedly fabricating a rape claim." (TAC ¶ 39.) Burdett also explains in his Response to the Motion to Dismiss that Officer Labriola's threat of arrest took place "near the end of the investigation—on or about May of 2019." (Resp. at 11, Dkt. No. 46.) He further clarifies in his Response that Officer Labriola's conduct took place between March 2019 and May 2019. While Burdett does not provide a specific date in his TAC or Response, he is not required to plead specific dates or to "plead around the statute of limitations in order to ease [his] opponent['s] discovery burdens." *Caruth v. Wexford Health Sources, Inc.*, No. 16 C 6621, 2018 WL 3630014, at *3 (N.D. Ill. July 31, 2018). Because an IIED claim accrues "at the time the last injurious act occurs or the conduct is abated,"

*Feltmeier*, 798 N.E.2d at 89, and it is plausible to infer from the TAC that Officer Labriola's alleged IIED continued as last as May 2019, the Court declines to dismiss the claim as time-barred.

Burdett must still plead enough to state a claim for IIED, however. Viewing the allegations in the light most favorable to Burdett, the Court finds that he has. Despite the "very high standard," *Jaskowski v. Rodman & Renshaw, Inc.*, 813 F. Supp. 1359, 1363 (N.D. Ill. 1993), accusing someone believed to be a sexual assault survivor of fabricating his claims and threatening him with arrest certainly could rise to the level of extreme and outrageous conduct. *See, e.g.*, *Cairel v. Alderden*, 821 F.3d 823 (7th Cir. 2016) (listing a situation where a police officer "berates a sexual assault victim instead of assisting the victim" as an example of extreme and outrageous conduct); *Snyder v. Smith*, 7 F. Supp. 3d 842, 862 (S.D. Ind. 2014) (finding that allegations that an officer mocked a survivor of sexual assault gave rise to an IIED claim under similar Indiana law). To be sure, Officer Labriola possessed more power or control over the situation than Burdett, and he arguably was aware that Burdett was susceptible to emotional distress given the allegations of assault Burdett had made against his father. *See Franciski*, 338 F.3d at 769. Burdett also has plausibly alleged that Officer Labriola knew there was a high probability his conduct would inflict severe emotional distress, as Officer Labriola allegedly spent three hours listening to twenty-year-old Burdett divulge the details of the sexual assault his father committed against him for years from 2005 to 2019. Thus, the Court makes the reasonable inference that Officer Labriola had reason to know Burdett was vulnerable to threatening conduct. As to the last element for stating an IIED claim, Burdett also specifically alleges that Officer Labriola's conduct caused him severe emotional distress. (TAC ¶ 62 ("As a direct and proximate result of the acts of Defendant Labriola, Plaintiff suffered . . . anxiety, humiliation, post-traumatic

stress disorder and severe emotional distress.").) With the elements satisfactorily alleged, Burdett has stated a plausible claim of IIED against Officer Labriola. The Court therefore declines to dismiss Count III for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Officer Labriola's motion to dismiss (Dkt. No. 39) is granted in part and denied in part. The motion is granted as to the unlawful seizure claim in Count I and the false arrest claim in Count II, but the motion is denied as to the unlawful search claim in Count I and the IIED claim in Count III.

ENTERED:

Dated: September 30, 2022

_____
Andrea R. Wood
United States District Judge